UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

THE INTERCEPT MEDIA, INC.,

                  Plaintiff,

    - against -

UNITED STATES DEPARTMENT OF
GOVERNMENT EFFICIENCY, a/k/a UNITED
STATES DOGE SERVICE, and UNITED
STATES DIGITAL SERVICE,

                  Defendants.

---------------------------------------------------------------x

Case No. __25-2404__

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF FOR
VIOLATION OF THE FREEDOM
OF INFORMATION ACT**

Plaintiff The Intercept Media, Inc. ("The Intercept"), publisher of *The Intercept*, by and through its undersigned attorneys, brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, for declaratory, injunctive, and other appropriate relief to (1) confirm that, in line with well-established law, Defendants the United States Department of Government Efficiency ("DOGE") and United States Digital Service ("USDS") are subject to FOIA; (2) compel the release of documents DOGE and USDS have wrongfully withheld based on the erroneous assertion that they are not subject to FOIA; and (3) require DOGE and USDS to immediately comply with their obligations to preserve public records. In support thereof, The Intercept alleges as follows:

## INTRODUCTION

1. Plaintiff The Intercept Media, Inc., is a not-for-profit American news organization and publisher of *The Intercept*, which publishes original, independent journalism that empowers the public with information to demand a better world from institutions and leaders.

2. Through this action, The Intercept seeks to compel Defendants to disclose records that would provide a critical window into the chaotic initial months of the newly-formed United

States Department of Government Efficiency, which has in the two months since its inception, shut down the Consumer Finance Protection Bureau, purged thousands from the federal work force, dismantled the U.S. Agency for International Development, and ignored stringent security protocols to access enormous swaths of personal information on millions of Americans.

3. On March 5, 2025, The Intercept submitted its first FOIA request to DOGE, seeking emails between *de facto* DOGE head Elon Musk and staffers associated with DOGE initiatives. That request was followed by four additional FOIA requests (together, the "Requests") all aimed at shedding light on how DOGE has staged the most dramatic shakeup of the federal government in the last century.

4. Defendants in response have not produced a single responsive record. Instead, in an unsigned March 18, 2025 email, DOGE denied the Requests in whole, claiming that DOGE is not subject to FOIA at all.

5. DOGE's claim that it is not subject to FOIA has already been considered by at least one federal court—and squarely rejected.

6. The Intercept therefore brings this lawsuit to compel this disruptive and powerful agency to abide by established law by fulfilling the requirements set forth in FOIA and, concomitant with that obligation, to force DOGE to preserve these important government records going forward which, without Court intervention, likely will be lost forever.

**A. The History of DOGE**

7. On January 20, 2025, President Donald Trump signed Executive Order 14158, "Establishing and Implementing the President's 'Department of Government Efficiency.'" Exec. Order No. 14158, 90 Fed. Reg. 8441 (Jan. 29, 2025). The Order "establishe[d] the Department of Government Efficiency to implement the President's DOGE Agenda, by modernizing Federal

technology and software to maximize governmental efficiency and productivity." 90 Fed. Reg. at 8441.

8. The order renamed an existing agency, the United States Digital Service, as the United States DOGE Service, and reorganized it to come within the Executive Office of the President ("EOP"). *Id.*

9. The order also established a "temporary organization," as that term is defined in 5 U.S.C. § 3161(a), "the U.S. DOGE Service Temporary Organization," which is set to exist for 18 months, until July 2026. 90 Fed. Reg. at 8441

10. A USDS Administrator in the EOP reporting to the White House Chief of Staff was charged with heading the U.S. DOGE Service Temporary Organization. *Id.*

11. President Trump has since issued multiple additional executive orders expanding DOGE's role.

12. On February 11, 2025, he signed Executive Order 14210, "Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative," which directs other federal agencies to develop hiring plans that ensure new hires are in highest-need areas and mandates that agencies shall not fill vacancies that "the DOGE Team Lead assesses should not be filled" unless the agency head determines otherwise. Exec. Order No. 14210, 90 Fed. Reg. 9669 (Feb. 11, 2025).

13. Another order, Executive Order 14222, directs agencies to consult with DOGE "Team Leads" (as defined by the order) on contract and grant reviews, approvals, and terminations. 90 Fed. Reg. 11095 (Feb. 26, 2025).

14. In February, the White House announced that Amy Gleason, a former health care investment executive, is serving as DOGE's acting administrator[1]. However, scores of federal employees and public statements by President Trump indicate that in fact Mr. Musk is at DOGE's helm. And in a court filing unsealed earlier this month, the federal government acknowledged that Ms. Gleason has, since February, actually been detailed to the Department of Health and Human Services.[2]

15. Last week, the United States District Court for the District of Maryland found it likely that Mr. Musk is in fact "the official performing the duties and functions of the USDS Administrator," that "DOGE has taken numerous actions without any apparent advanced approval" by leaders at other agencies, and that such conduct likely violates the Appointments Clause. *Does 1-26 v. Musk*, No. CV 25-0462-TDC, 2025 WL 840574, at *18 (D. Md. Mar. 18, 2025).

16. DOGE has wreaked major havoc in the federal government in its short existence.

17. In February, it set in motion the process of effectively shutting down the Consumer Finance Protection Bureau by firing many of its 1,700 employees[3] and directing others to cease work[4].

18. DOGE has also dismantled USAID, the agency that provides foreign aid to countries around the world, with Secretary of State Marco Rubio recently announcing that,

---

[1] Nicholas Nehamas, et al., *A Mystery Solved: Amy Gleason, a Former Health Care Executive, Is Running DOGE,* NEW YORK TIMES, (Feb. 25, 2025), at https://www.nytimes.com/2025/02/25/us/politics/amy-gleason-doge-administrator.html.

[2] Josh Marcus, *Amy Gleason – who the Trump admin claims is running DOGE – has been working at another agency for weeks,* THE INDEPENDENT, (Mar. 19, 2025), at https://www.the-independent.com/news/world/americas/us-politics/trump-doge-musk-amy-gleason-b2718166.html.

[3] Hugh Son, *Trump administration and Musk's DOGE plan to fire nearly all CFPB staff and wind down agency, employees say,* NBCNEWS.COM, (Feb. 28, 2025), at https://www.nbcnews.com/business/business-news/trump-administration-musks-doge-plan-fire-cfpb-staff-close-agency-rcna194217.

[4] Laura Wamsley, *New CFPB chief closed headquarters, tells all staff they must not do 'any work tasks',* NPR.ORG, (Feb.10, 2025), at https://www.npr.org/2025/02/08/nx-s1-5290914/russell-vought-cfpb-doge-access-musk.

following DOGE's efforts, more than 83 percent of the agency's programs have been canceled.[5] Mr. Musk replied to Secretary Rubio's announcement in a post on X: "Tough, but necessary. Good working with you."[6]

19.     As the Court in *Does 1-26* summarized: "[I]n his first month with DOGE, Musk and his DOGE Team Members have been heavily engaged in gaining access to agency computer systems; identifying grants, contracts, and employees to be terminated; using government-wide emails to monitor employees' weekly activities; and shutting down agency headquarters and websites." *Does 1-26 v. Musk*, 2025 WL 840574, at *16.

20.     Before President Trump took office, Mr. Musk and other DOGE representatives often touted the transparency DOGE would bring to the federal government.

21.     In December, Mr. Musk on his X account said DOGE would address the issue of eliminating foreign aid "with full transparency for the American people.[7]"

22.     The same month, Vivek Ramaswamy, who has been one of DOGE's other highest-profile leaders, said in response to questions about whether DOGE meetings would be livestreamed that DOGE "want[s] to bring the public with us."[8]

23.     These commitments to transparency continued since President Trump's inauguration and the official establishment of DOGE.

24.     On February 9, 2025, Mr. Musk posted on X that "[a]ll aspects of the government must be fully transparent and accountable to the people.[9]" In an appearance with President Trump in the White House on February 11, 2025, Mr. Musk said the following of DOGE's commitment

---

[5] Karoun Demirjian, et al, *Two Officials Who Helped Dismantle US Aid Agency Are Named as Its New Leaders,* NEW YORK TIMES, (Mar. 19, 2025), at https://www.nytimes.com/2025/03/19/us/politics/usaid-doge-leadership.html.
[6] https://x.com/elonmusk/status/1899068961649516978 (last visited Mar. 21, 2025).
[7] https://x.com/elonmusk/status/1865178620060123639 (last visited Mar. 21, 2025).
[8] Sara Dolgin, *Tennessee Sen. Marsha Blackburn to introduce DOGE Acts,* CHATTANOOGA TIMES FREE PRESS, (Dec. 5, 2024), at https://www.timesfreepress.com/news/2024/dec/05/tennessee-sen-marsha-blackburn-to-introduce-doge/
[9] https://x.com/elonmusk/status/1888583443962814811, (last visited Mar. 21, 2025).

5

to transparency: "We are actually trying to be as transparent as possible[.] …. So all of our actions are maximally transparent. I don't know of a case where an organization has been more transparent than the DOGE organization."[10] Mr. Musk followed that up with a February 25, 2025 post stating that "[t]he @DOGE department/agency leaderboard shows progress within the government, so the public can see for themselves who is making the most or least progress![11]"

25. As recently as March 9, 2025, the official DOGE X account said the agency is "[s]triving for maximum government transparency.[12]"

26. In practice, the DOGE approach has been the opposite of transparent.

27. DOGE personnel have apparently been communicating "primarily on the encrypted Signal app,"[13] which allows users to permanently delete messages.

28. Media reports also indicate that, since its inception, DOGE operatives have considered "secrecy and avoiding leaks" paramount.[14]

29. The Intercept therefore brings this lawsuit to compel what many now believe is the most powerful agency in the federal government to fulfill its routine agency duties by meeting the requirements of FOIA, and concomitant with that principal, to force DOGE to preserve public records going forward which, without Court intervention, will be lost forever.

### B. The Federal Court for the District of Columbia Concludes DOGE Is Subject To FOIA

30. DOGE's argument that it is not subject to FOIA is without basis in law and has been squarely rejected. At least one federal court has considered the very same argument DOGE

---

[10] Hugo Lowell, *Elon Musk appears with Trump and tries to claim 'Doge' team is transparent*, THE GUARDIAN (Feb. 11, 2025), at https://www.theguardian.com/us-news/2025/feb/11/elon-musk-trump-doge.
[11] https://x.com/elonmusk/status/1894468659571298735, (last visited Mar, 21, 2025).
[12] https://x.com/DOGE/status/1898958395547296101, (last visited Mar. 21, 2025).
[13] Scott Patterson, et al., *Inside DOGE's Clash With the Federal Workforce*, WALL STREET JOURNAL, (Feb. 27, 2025), at https://www.wsj.com/politics/policy/inside-doge-elon-musk-government-employees-b87fc17a.
[14] Theodore Schleifer, Madeleine Ngo, *Inside Elon Musk's Plan for DOGE to Slash Government Costs*, NEW YORK TIMES, (Jan. 12, 2025), at https://www.nytimes.com/2025/01/12/us/politics/elon-musk-doge-government-trump.html.

has advanced in denying The Intercept's Requests—that it is not subject to FOIA—and rejected it.

31. In a March 10, 2025 order, the United States District Court for the District of District of Columbia issued a preliminary injunction requiring DOGE to process a watchdog group's FOIA request and ordering DOGE to preserve all potentially responsive records. *See Citizens for Resp. & Ethics in Washington v. U.S. DOGE Serv.*, No. 25-CV-511 (CRC), 2025 WL 752367, at *11 (D.D.C. Mar. 10, 2025).

32. For an entity established in the Executive Office of the President to be subject to FOIA, there must be "a finding that the entity in question 'wielded substantial authority independently of the President.'" *Citizens for Resp. & Ethics in Wash. v. Off. of Admin.*, 566 F.3d 219, 222 (D.C. Cir. 2009) (citation omitted). FOIA does not extend to "the President's immediate personal staff or units in the [EOP] whose sole function is to advise and assist the President." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 156 (1980).

33. In rejecting DOGE's extraordinary argument, that court found that DOGE wielded substantial authority independently of the President sufficient to qualify as an agency under FOIA based on three sources of information.

34. *First*, it found relevant that the executive orders establishing DOGE "appear to endow USDS with substantial authority independent of the President" and "give[] USDS the authority to implement the DOGE Agenda, not just to advise the President in doing so." *Citizens for Resp. & Ethics in Washington*, 2025 WL 752367at *11.

35. *Second*, the Court analyzed public statements made by President Trump and Mr. Musk and concluded they "suggest that the President and [DOGE] leadership view the

department as wielding decision-making authority to make cuts across the federal government." *Id.*

36. *Third*, the Court concluded that DOGE's actions demonstrated that it in fact has "substantial authority over vast swathes of the federal government." *Id.* As evidence, the Court cited Mr. Musk's stated plan to decimate USAID—and its subsequent decimation—and DOGE's promise to eliminate more than $1 billion in government contracts. "[T]he Court can conclude that [DOGE] likely has at least some independent authority to identify and terminate federal employees, federal programs, and federal contracts. Doing any of those three things would appear to require substantial independent authority; to do all three surely does." *Id.*

37. The Court also noted that DOGE has in other circumstances acknowledged that it *is* an agency: "In other briefing before courts in this district, [DOGE] has argued that it qualifies as an agency—for instance, for purposes of the Economy Act—when it suits it." *Id.* at *12 n.3 (citing *Am. Fed'n of Lab. & Cong. of Indus. Organizations*, ⎯⎯ F.Supp.3d at ⎯⎯, 2025 WL 542825, at *3 (D.D.C. Feb. 14, 2025))[15].

### C. The Freedom of Information Act

38. The Intercept brings this action under FOIA to enjoin Defendants from continuing to improperly withhold responsive agency records. This FOIA action is necessary because Defendants have denied each of The Intercept's Requests in full.

39. The Freedom of Information Act "focuses on the citizens' right to be informed about 'what their government is up to,'" by requiring the release of "[o]fficial information that sheds light on an agency's performance of its statutory duties." *DOJ v. Reporters Comm. for*

---

[15] *See also Am. Fed'n of State, Cnty., and Mun. Empls., et al v. SSA*, Civil Action No. ELH-25-0596, 2025 U.S. Dist. LEXIS 50909, at *157 (D. Md. Mar. 20, 2025) (ruling that "DOGE is an agency with[in] the meaning of the Privacy Act").

8

*Freedom of the Press*, 489 U.S. 749, 750, 772-73 (1989) (citation omitted).  "[D]isclosure, not secrecy, is the dominant objective" of FOIA.  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks and citations omitted).

40. FOIA defines "agency" as "includ[ing] any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President)."  5 U.S.C. § 552(f)(1).

41. To determine whether an entity established in the Executive Office of the President is subject to FOIA, courts consider whether the entity wielded "substantial independent authority in the exercise of specific functions," or whether its "sole function" is to advise and assist the Chief Executive.  *Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 547 (2d Cir. 2016).

42. Through its Requests, The Intercept seeks to bring transparency to DOGE's enormous project of government reorganization.  This is a matter of significant public interest and concern.

## PARTIES

43. Plaintiff The Intercept Media, Inc. is a not-for-profit American news organization headquartered at 15 W 38th St, #636, New York, New York.  The Intercept Media, Inc. publishes *The Intercept*, an award-winning, nationally recognized news organization with a reputation for holding power to account.  *The Intercept*'s in-depth investigations focus on politics, war, surveillance, corruption, the environment, science, technology, criminal justice, and the media.

44. Defendants Department of Government Efficiency and United States Digital Service are "agenc[ies]" within the meaning of 5 U.S.C. § 552(f)(1).  Defendants have possession of and control over the documents and information requested by The Intercept.

9

**JURISDICTION AND VENUE**

45.  This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. §§ 701-706, and 28 U.S.C. § 1331.

46.  Venue in the Southern District of New York is proper under 5 U.S.C. § 552(a)(4)(B) because Intercept Media, Inc. has its principal place of business in New York City.

**STATUTORY BACKGROUND**

47.  The Freedom of Information Act provides that any member of the public may request records from a United States agency.  Upon receipt of a FOIA request, an agency must determine within 20 business days—or, in "unusual circumstances," by 30 business days— whether it will comply with a request and notify the requestor of its determination and reasoning in writing.  5 U.S.C. §§ 552(a)(6)(A)(i)-B(i).  This determination must also timely indicate the scope of the documents the agency intends to produce and the exemptions, if any, that it will apply to withhold responsive documents.

48.  In response to a FOIA request, an agency, after engaging in a reasonable search for responsive records, must disclose in a timely manner all records that do not fall within nine narrowly construed statutory exemptions.  5 U.S.C. §§ 552(a)(3)(A), (C), (b)(1)-(9).

49.  Upon complaint, a district court can enjoin an agency from withholding records and order production of records improperly withheld.  5 U.S.C. § 552(a)(4)(B).

**FACTUAL BACKGROUND**

50.  The Intercept submitted its first FOIA request[16] to DOGE on March 5, 2025.  A true and correct copy of the request is attached here as **Exhibit A** (the "Musk Request").

---

[16] Each of the Requests was submitted on behalf of The Intercept by Shawn Musgrave, the publication's newsroom counsel and correspondent.

51. The Musk Request seeks emails between Mr. Musk and five high-ranking White House and DOGE staffers—Susan Wiles, Christopher Young, Noah Peters, Stephanie Holmes, and Adam Ramada—from January 1, 2025 until the date of the Request. *Id.* The Musk Request sought a fee waiver and asked for expedited processing in light of the "considerable public interest in Mr. Musk's role in the Trump administration" and the "urgency to inform the public about it, as further demonstrated by the numerous lawsuits regarding Mr. Musk's role."

52. Each of the individuals named in the Musk Request appears to have played a significant role in the DOGE activities described above.

53. Ms. Wiles is the White House chief of staff. In a February 26, 2025 meeting, she told Republican Senators that they could contact her if they had issues with DOGE.[17]

54. Mr. Young was one of Mr. Musk's affiliates who participated in the shutdown of the CFPB in February.[18] A news report detailing the takeover describes Mr. Young as "a Republican political adviser connected with Elon Musk."[19]

55. Mr. Peters is a senior adviser at the Office of Personnel Management[20] and is alleged to have written one of the White House's early memorandums requiring federal employees to return to in-person work.[21]

---

[17] Jordain Carney, *Wiles talks DOGE with Senators*, POLITICO, (Feb. 26, 2025), at https://www.politico.com/live-updates/2025/02/26/congress/susie-wiles-talks-doge-with-senators-00206268.
[18] Makena Kelly, *DOGE Is Now Inside the Consumer Financial Protection Bureau*, WIRED.COM, (Feb. 7, 2025), at https://www.wired.com/story/doge-access-consumer-financial-protection-bureau-data/.
[19] *Id.*
[20] Avi Asher-Shapiro, et al., *Elon Musk's Demolition Crew,* PROPUBLICA.ORG, (Feb. 6, 2025), at https://projects.propublica.org/elon-musk-doge-tracker/.
[21] *Id.*

56. Ms. Holmes formerly ran an anti-DEI consulting firm.[22] She is now apparently in charge of human resources at DOGE.[23]

57. Mr. Ramada is part of DOGE's Department of Education team as well as DOGE efforts at the Department of Labor.[24]

58. The Intercept submitted its second FOIA request to DOGE on March 11, 2025 ("MOU Request"). The MOU Request seeks the following:

> 1. All memoranda and/or agreements — including but not limited to memoranda of understanding (MOU), memoranda of agreement (MOA), and assignment agreements — that USDS has entered into with any other department, agency, or other component of the federal executive branch since January 1, 2025.
> 2. All memoranda and/or agreements — including but not limited to memoranda of understanding (MOU), memoranda of agreement (MOA), and assignment agreements — that any other department, agency, or other component of the federal executive branch has entered into on USDS's behalf or concerning USDS's work since January 1, 2025.
> 3. All memoranda and/or agreements — including but not limited to memoranda of understanding (MOU), memoranda of agreement (MOA), and assignment agreements — that any other department, agency, or other component of the federal executive branch has entered into regarding the work of a USDS employee since January 1, 2025.

59. As with the Musk Request, the MOU Request sought a fee waiver and expedited processing, explaining that "[t]here is an urgency to inform the public about USDS's relationships with other federal entities, as demonstrated by both the extensive media coverage of USDS and the numerous lawsuits regarding its role." A true and correct copy of the MOU Request is attached here as **Exhibit B**.

---

[22] Jason Koebler, Joseph Cox, *Musk's DOGE Brings in HR Consultant Focused on 'Non-Woke' DEI 'Aligned With Our Faith'*, 404MEDIA.CO, (Feb. 1, 2025), at https://www.404media.co/musks-doge-brings-in-hr-consultant-focused-on-non-woke-dei-aligned-with-our-faith/.

[23] Sue Reisinger, *Former Weil Atty, Ex-Supreme Court Clerks On DOGE Staff*, LAW360.COM, (Feb. 10, 2025), at https://www.law360.com/pulse/articles/2295250/former-weil-atty-ex-supreme-court-clerks-on-doge-staff.

[24] Kyle Cheney, *Wondering what DOGE is up to? Check the court docs*, POLITICO.COM, (Feb. 21, 2025), at https://www.politico.com/news/2025/02/21/doge-court-documents-musk-00205534.

60.     The Intercept's third request was lodged on March 11, 2025 ("OPF Request"), seeking "a copy of records from the Official Personnel Folder" for each DOGE employee sufficient to determine the following:

1. Name;
2. Present and past position titles and occupational series;
3. Present and past grades;
4. Present and past annual salary rates (including performance awards or bonuses, incentive awards, merit pay amount, Meritorious or Distinguished Executive Ranks, and allowances and differentials);
5. Present and past duty stations (includes room numbers, shop designations, or other identifying information regarding buildings or places of employment); and
6. Position descriptions, identification of job elements, and those performance standards (but not actual performance appraisals)

61.     A true and correct copy of the OPF Request is attached here as **Exhibit C**.  It also sought a fee waiver and expedited processing.

62.     The Intercept submitted its fourth request on March 14, 2025 ("Gleason Request").

63.     The Gleason Request sought emails regarding Ms. Gleason's "appointment as administrator of the U.S. DOGE Service," as well as emails between Ms. Gleason and Mr. Musk and Mr. Ramaswamy.

64.     It also sought emails between Ms. Gleason and a variety of people known to have been involved with DOGE and the above-described events, including Steve Davis, who at one time served as president of Mr. Musk's Boring Company and has now been hailed as another *de facto* leader of DOGE[25].

65.     The Gleason Request also sought emails between Ms. Gleason and OMB director Russel Vought; Jennifer Balajadia, another Boring Company-turned-DOGE operative; and Marko Elez, a 25-year-old DOGE staffer accused of violating policy by emailing a spreadsheet containing

---

[25] Ryan Mac, et al., *Meet Elon Musk's Top Lieutenant Who Oversees DOGE,* NEW YORK TIMES, (Mar. 20, 2025), at https://www.nytimes.com/2025/03/20/technology/elon-musk-steve-davis-doge.html.

13

unencrypted personal data to two members of the Trump administration.[26] It also sought emails between Ms. Gleason and Luke Farritor, a 23-year-old DOGE staffer Mr. Musk installed as an "executive engineer" at the Department of Health and Human Services.[27]

66. A true and correct copy of the Gleason Request is attached here as **Exhibit D**. As with the others, the Gleason Request also sought a fee waiver and expedited processing.

67. The Intercept's fifth and final request also was filed on March 14, 2025 ("Congress Request").

68. The Congress Request sought "all emails…sent to or from any email address from the US DOGE Service email domain" and any email address ending in "house.gov" or "senate.gov" or with Mr. Ramaswamy.

69. A true and correct copy of the Congress Request is attached here as **Exhibit E**. It also sought a fee waiver and expedited processing.

70. The Intercept received exactly one response from DOGE, a March 18, 2025 email from an unspecified sender[28] using the email address admin@DOGE.eop.gov, purporting to respond to all of the Requests at once ("Decision Letter"). The entirety of the Decision Letter reads as follows:

> Dear Mr. Musgrave,
>
> We are writing in reference to your Freedom of Information Act (FOIA) requests to USDS.
>
> As set forth in Executive Order 14158, Establishing and Implementing the President's "Department of Government Efficiency," USDS sits within the Executive Office of the President, and the USDS Administrator reports to

---

[26] Beatrice Nolan, *A 25-year old DOGE staffer violated Treasury policy by emailing unencrypted personal data to Trump administration officials,* FORTUNE.COM, (Mar. 17, 2025), at https://fortune.com/2025/03/17/doge-staffer-marko-elez-treasury-policy-personal-data-trump-officials/.
[27] *Supra.* n.19.
[28] That the Decision Letter failed to specify "the names and titles or positions of each person responsible for the denial" of the Requests alone violates FOIA. *See* 5 U.S.C. § 552(a)(6)(C)(i).

the President's Chief of Staff. We write now to inform you that USDS is subject to the Presidential Records Act, 44 U.S.C.S. § 2201 et seq., and is not subject to FOIA. We therefore decline your request.

71. A true and correct copy of the Decision Letter is attached here as **Exhibit F**.

72. Though Defendants effectively acknowledged receipt of the Requests in the Decision Letter, Defendants have not produced a single record, and The Intercept has not received any further response or communication from DOGE.

73. Because DOGE has refused to produce records based on its claim that it is not subject to FOIA, there is no administrative appeal process available to The Intercept, and The Intercept should be "deemed to have exhausted [its] administrative remedies." 5 U.S.C. § 552(a)(6)(C)(i).

## CAUSE OF ACTION
### (Violation of Freedom of Information Act)
### 5 U.S.C. § 552(a)
### Against All Defendants

74. The Intercept incorporates the above paragraphs as if set forth fully herein.

75. The Intercept has a legal right under FOIA to obtain the agency records it requested in the Requests.

76. Defendants' refusal to make the records sought by the Requests available violates FOIA, 5 U.S.C. §§ 552(a)(3) and (a)(6), and applicable regulations promulgated thereunder.

77. 5 U.S.C. § 552(a)(4)(B) authorizes the grant of injunctive relief to The Intercept because Defendants continue to flout FOIA and improperly withhold agency records. Because Defendants' refusal to produce records responsive to the Requests prevents The Intercept from educating the public about DOGE's activities, The Intercept will continue to suffer irreparable injury from Defendants' withholding of government documents responsive to The Intercept's Requests in defiance of FOIA mandates.

78. 28 U.S.C. § 2201 authorizes declaratory relief because an actual and justiciable controversy exists regarding Defendants' improper withholding of agency records in violation of FOIA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff The Intercept Media, Inc. respectfully requests that the Court award it the following relief:

A. Enter judgment that Defendants' unlawful withholding of the records requested violates FOIA;

B. Enter an order requiring each Defendant to immediately release any and all responsive and not otherwise exempt records to Plaintiff;

C. Enter an order requiring Defendants to preserve all potentially responsive records, and to immediately cease any destruction of public records;

D. Award Plaintiff its reasonable costs and attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E); and

E. Grant such further relief as the Court may deem just and proper.


Dated: New York, New York
       March 24, 2025

                                        Respectfully submitted,

                                        DAVIS WRIGHT TREMAINE LLP


                                        By: */s/ Leena Charlton*
                                             Leena Charlton

                                        1251 Avenue of the Americas, 21st Floor
                                        New York, NY 10020-1104
                                        Phone: (212) 402-4072
                                        leenacharlton@dwt.com

Thomas R. Burke (*pro hac vice forthcoming*)
Sarah E. Burns (*pro hac vice forthcoming*)
DAVIS WRIGHT TREMAINE LLP
50 California Street
San Francisco, CA 94111
Phone: (415) 276-6500
thomasburke@dwt.com
sarahburns@dwt.com

*Counsel for Plaintiff*
*The Intercept Media, Inc.*