UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

THE INTERCEPT MEDIA, INC.,

                Plaintiff,

       - against -

UNITED STATES DEPARTMENT OF
GOVERNMENT EFFICIENCY, a/k/a UNITED
STATES DOGE SERVICE, and UNITED
STATES DIGITAL SERVICE,

             Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. 1:25-cv-02404-VSB-OTW

---------------------------------------------------------- x

**PLAINTIFF THE INTERCEPT MEDIA, INC.'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

DAVIS WRIGHT TREMAINE LLP
Leena Charlton
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
Phone: (212) 402-4072
leenacharlton@dwt.com

DAVIS WRIGHT TREMAINE LLP
Thomas R. Burke (*pro hac vice*)
Sarah E. Burns (*pro hac vice*)
50 California Street
San Francisco, CA 94111
Phone: (415) 276-6500
thomasburke@dwt.com
sarahburns@dwt.com

*Counsel for Plaintiff
The Intercept Media, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 3

    I.      The Executive Orders Establishing USDS ............................................... 3

    II.     USDS's First 100 Days ............................................................................. 5

    III.    The Intercept's FOIA Requests ................................................................ 7

ARGUMENT ........................................................................................................................ 9

    I.      Legal Standard .......................................................................................... 9

    II.     USDS Is An Agency Subject To FOIA. ................................................... 9

          A.     The Intercept Plausibly Alleged Facts Showing USDS Is In Fact An Agency. ......................................................................... 10

          B.     Every Court to Have Considered It Has Found USDS Is An Agency. .................................................................................. 12

          C.     An Entity's Charter Documents Are Only One Part Of The *Main Street Legal* Analysis. ............................................... 13

          D.     In Any Event, The Executive Orders Also Indicate USDS Is An Agency. ....................................................................... 14

    III.    The *CREW* Decision Is Highly Persuasive. ......................................... 17

          A.     The *CREW* Court Properly Found USDS Is An Agency Subject To FOIA. ............................................................... 17

          B.     USDS's Strained Attempt To Identify "Errors" In The *CREW* Court's Analysis Fails. .................................................. 19

CONCLUSION ................................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AFSCME v. Social Security Administration*,
    2025 WL 1206246 (D. Md. Apr. 17, 2025) ....................................................................12, 13

*Am. Fed'n of Gov. Emps., AFL-CIO v. Off. of Pers. Mgmt.*,
    No. 25-cv-01780-WHA (N.D. Cal.) ....................................................................................22

*Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*,
    --- F. Supp. 3d at ----, 2025 WL 542825, at *3 (D.D.C. Feb. 14, 2025 ....................13, 15, 18

*Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*,
    2025 WL 1129227 (D.D.C. Apr. 16, 2025) ....................................................................13, 22

*Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*,
    No. CV 25-339 (JDB), (D.D.C. Apr. 16, 2025)....................................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................................9

*Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
    369 F.3d 212 (2d Cir. 2004)...................................................................................................9

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
    364 F. Supp. 3d 253 (S.D.N.Y. 2019)....................................................................................5

*Citizens for Resp. & Ethics in Washington v. U.S. DOGE Serv.*,
    --- F. Supp. 3d ----, 2025 WL 752367 (D.D.C. Mar. 10, 2025), *reconsideration denied*,
    2025 WL 863947 (D.D.C. Mar. 19, 2025).................................................................. *passim*

*D.O.J. v. Reps. Comm. For Freedom of Press*,
    489 U.S. 749 (1989)...............................................................................................................9

*Does 1-26 v. Musk*,
    --- F. Supp. 3d ----, 2025 WL 840574 (D. Md. Mar. 18, 2025)....................................6, 15, 23

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007).....................................................................................................9

*Faber v. Metro. Life Ins. Co.*,
    648 F.3d 98 (2d Cir. 2011).....................................................................................................9

*Glob. Network Commc'ns, Inc. v. City of New York*,
  458 F.3d 150 (2d Cir. 2006).................................................................................9

*Grand Cent. P'ship, Inc. v. Cuomo*,
  166 F.3d 473 (2d Cir. 1999)................................................................................9

*Int'l Refugee Assistance Project, Inc. v. U.S. Citizenship & Immigr. Servs.*,
  551 F. Supp. 3d 136 (S.D.N.Y. 2021)................................................................17

*Kissinger v. Reporters Committee for Freedom of the Press*,
  445 U.S. 136 (1980)..........................................................................................10

*Lewis v. M&T Bank*,
  2022 WL 775758 (2d Cir. Mar. 15, 2022).........................................................5

*Main Street Legal Services v. National Security Council*,
  811 F.3d 542 (2d Cir. 2016)...................................................................... *passim*

*N.Y. Packaging II LLC v. Mustang Mktg. Grp. LLC*,
  2022 WL 604136 (E.D.N.Y. Mar. 1, 2022).......................................................19

*Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*,
  __ F. Supp. 3d __, 2025 WL 597959 (D.D.C. Feb. 25, 2025)...........................23

*New York v. Trump*,
  2025 WL 1095147 (S.D.N.Y. Apr. 11, 2025)....................................................22

*Roman v. Nat'l Sec. Agency*,
  2009 WL 303686 (E.D.N.Y. Feb. 9, 2009).......................................................17

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000)...............................................................................20

*Sierra Club v. Andrus*,
  581 F.2d 895 (D.C. Cir. 1978)..........................................................................12

*Soucie v. David*,
  448 F.2d 1067 (D.C. Cir. 1971).............................................................12, 16, 22

*State v. Musk*,
  2025 WL 520583 (D.D.C. Feb. 18, 2025).........................................................15

*In re Sterling Foster & Co., Inc., Sec. Litig.*,
  222 F. Supp. 2d 216 (E.D.N.Y. 2002)...............................................................20

*Trump v. Hawaii*,
  585 U.S. 667 (2018)..........................................................................................20

*U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n,*
  532 U.S. 1 (2001) ..................................................................................................9

*United States v. Roberts,*
  710 F. Supp. 3d 658 (D. Alaska 2024) ..................................................................19

*Vengalattore v. Cornell Univ.,*
  36 F.4th 87 (2d Cir. 2022) ......................................................................................2

**Statutes**

5 U.S.C. § 552(f)(1) ...................................................................................................10

Economy Act ........................................................................................................11, 13

Freedom of Information Act (FOIA) ................................................................ *passim*

Privacy Act............................................................................................................11, 13

**Regulations**

Executive Order
  14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025) ................................................... *passim*
  14,170, 90 Fed. Reg. 8621 (Jan. 20, 2025) ..............................................................4
  14,210, 90 Fed. Reg. 9669 (Feb. 11, 2025) ...............................................4, 15, 18
  14,219, 90 Fed. Reg. 10,583 (Feb. 19, 2025) ...................................................4, 5
  14,222, 90 Fed. Reg. 11095 (Feb. 26, 2025) ...................................................5, 15

Plaintiff The Intercept Media, Inc. ("The Intercept") respectfully submits this memorandum of law in opposition to the Motion to Dismiss (ECF No. 19) (the "Motion") filed by Defendants the United States Department of Government Efficiency and United States Digital Service (collectively, "USDS").

## PRELIMINARY STATEMENT

On March 27, 2025, Elon Musk, *de facto* head of USDS, told reporters[1] that USDS's plan to restructure the government "is a revolution, and I think it might be the biggest revolution in government since the original revolution."  In its first 100 days, USDS has cut enormous swaths of government contracts, terminated thousands of employees, attempted to sell off federal property,[2] and shut down one of the world's largest sources of humanitarian aid.  It has done so in near-total secrecy, communicating via Signal, the auto-deleting messaging app, declining to reveal the extent of its downsizing plans to the press, refusing to name its staffers, and accusing those who do name them of committing a crime.

To provide the public a window into USDS's actions, Plaintiff The Intercept requested documents from USDS under the federal Freedom of Information Act, seeking 1) communications between and among DOGE officials, 2) memoranda and agreements involving DOGE and its efforts, and 3) personnel records identifying the DOGE employees.  USDS denied these requests, arguing they were not subject to FOIA at all.  The Intercept sued.

USDS now moves to dismiss The Intercept's complaint ("Complaint" or "Compl."), arguing that, under *Main Street Legal Services v. National Security Council*, 811 F.3d 542 (2d Cir. 2016), the Complaint fails to plausibly allege that USDS is an agency.  In support of that argument,

---

[1] Fox News, *Elon Musk and DOGE team give exclusive look at how they're cutting waste, handle critics* (Mar. 27, 2025), https://www.foxnews.com/video/6370654825112  Transcript available at:  https://www.rev.com/transcripts/musk-and-doge-on-brett-baier.

[2] Jill Colvin et al., *Trump administration deletes list of hundreds of federal buildings targeted for potential sale*, AP (Mar. 5, 2025), https://apnews.com/article/gsa-federal-buildings-doge-fbi-doj-aa123e9c3b12e38c8fa511c2a727f880.

USDS relies on a cramped reading of the Executive Orders establishing USDS, argues that its authority is constrained and its sole purpose is to "advise and assist" the President, and asks that the Court give no credence to a recent decision in the United States District of the District of Columbia finding that the USDS *is* likely an agency subject to FOIA.  But The Intercept's burden to overcome a motion to dismiss is not high; all that is required is that, assuming all of the Complaint's well-pleaded facts are true, the Complaint plausibly alleges an entitlement to relief. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility" of liability.  *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022).

The Intercept has easily met that burden, and none of USDS's arguments come close to showing otherwise.

*First,* The Intercept has adequately alleged that USDS is in fact an agency.  Those facts show USDS does not simply "advise and assist" the President, but rather that USDS has been given substantial authority, independent of the President, to act within, and often against, other federal agencies.

*Second*, USDS places too much reliance on its charter documents, which are just the beginning of the analysis when determining whether USDS qualifies as an agency under *Main Street Legal*.  In any event, the relevant Executive Orders indicate that USDS has been given authority to implement President Trump's DOGE agenda, not merely to advise him on it.

*Third*, a D.D.C. court has already determined that USDS is subject to FOIA, and that court's decision should be given significant weight.  *Citizens for Resp. & Ethics in Washington v. U.S. DOGE Serv.*, --- F. Supp. 3d ----, 2025 WL 752367 (D.D.C. Mar. 10, 2025), *reconsideration denied*, 2025 WL 863947 (D.D.C. Mar. 19, 2025) ("*CREW*").

On these bases, USDS's motion to dismiss must be denied.

## FACTUAL BACKGROUND

### I.    The Executive Orders Establishing USDS

On January 20, 2025, President Trump signed Executive Order 14,158, titled "Establishing and Implementing the President's 'Department of Government Efficiency.'"    Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025).    The Order "establishe[d] the Department of Government Efficiency to implement the President's DOGE Agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity."  90 Fed. Reg. at 8441.  The Order renamed an existing agency, the United States Digital Service, as the United States DOGE Service, and reorganized it to come within the Executive Office of the President ("EOP").  *Id.*  The Order also established "within USDS" a "[t]emporary [o]rganization," "the U.S. DOGE Service Temporary Organization," which is set to exist for 18 months, *i.e.*, until July 2026. *Id.*

The Order also established "DOGE Teams:"

> In consultation with USDS, each Agency Head shall establish within their respective Agencies a DOGE Team of at least four employees, which may include Special Government Employees, hired or assigned within thirty days of the date of this Order.  Agency Heads shall select the DOGE Team members in consultation with the USDS Administrator.  Each DOGE Team will typically include one DOGE Team Lead, one engineer, one human resources specialist, and one attorney.  Agency Heads shall ensure that DOGE Team Leads coordinate their work with USDS and advise their respective Agency Heads on implementing the President's DOGE Agenda.

*Id.* § 3(c).  Under Section 4(a) of the Order, the USDS Administrator "shall commence a Software Modernization Initiative to improve the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems.  Among other things, the USDS Administrator shall work with Agency Heads to promote inter-operability between agency networks and systems, ensure data integrity, and facilitate responsible data collection and

synchronization." *Id.* § 4(a). The Order further directs agency heads to "take all necessary steps, in coordination with the USDS Administrator and to the maximum extent consistent with law, to ensure USDS has full and prompt access to all unclassified agency records, software systems, and IT systems." *Id.* at 8442, § 4(b).

Executive Order 14,170, titled "Reforming the Federal Hiring Process and Restoring Merit to Government Service," was signed the same day. 90 Fed. Reg. 8621 (Jan. 20, 2025). It requires that:

> Within 120 days of the date of this order, the Assistant to the President for Domestic Policy, in consultation with the Director of the Office of Management and Budget, the Director of the Office of Personnel Management, and the Administrator of the Department of Government Efficiency (DOGE), shall develop and send to agency heads a Federal Hiring Plan that brings to the Federal workforce only highly skilled Americans dedicated to the furtherance of American ideals, values, and interests.

*Id.* As relevant to USDS, it provides that "[t]he Federal Hiring Plan shall provide specific best practices for the human resources function in each agency, which each agency head shall implement, with advice and recommendations as appropriate from DOGE." *Id.* at 8622.

President Trump signed Executive Order 14,210 on February 11, 2025, "Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative," which directs other federal agencies to develop hiring plans that ensure new hires are in highest-need areas and mandates that agencies "shall not fill and vacancies … that the DOGE Team Lead assesses should not be filled" unless the agency head determines otherwise. 90 Fed. Reg. 9669 (Feb. 11, 2025).

On February 19, 2025, President Trump signed Executive Order 14,219, titled "Ensuring Lawful Governance and Implementing the President's 'Department of Government Efficiency' Deregulatory Initiative." 90 Fed. Reg. 10,583 (Feb. 19, 2025). With respect to USDS, that Order

directs that "[a]gency heads shall, in coordination with their DOGE Team Leads and the Director of [OMB], initiate a process to review all regulations subject to their sole or joint jurisdiction for consistency with law and Administration policy." *Id.* § 2(a). "Additionally, agency heads shall consult with their DOGE Team Leads and the Administrator of [the Office of Information and Regulatory Affairs] on potential new regulations as soon as practicable." *Id.* § 4.

The final relevant order, Executive Order 14,222, is titled "Implementing the President's 'Department of Government Efficiency' Cost Efficiency Initiative." 90 Fed. Reg. 11095 (Feb. 26, 2025). It directs agencies to consult with DOGE Team Leads on contract and grant reviews, approvals, and terminations. *Id.*

## II.    USDS's First 100 Days[3]

The authority USDS has exercised in its first 100 days has been broad. Detailed reporting to the press indicates that:

- In early January, a top USAID official told employees he had been ordered by DOGE to terminate a large swath of employees.[4] He initially did so, then rescinded the terminations, and was ultimately put on leave for doing so. *Id.* In late January, two top security chiefs at USAID were placed on leave after they attempted to stop DOGE staffers from accessing the agency's systems, "even when DOGE personnel threatened to call law enforcement."[5] On February 2, 2025, Mr. Musk in a post on X[6] called USAID "a criminal organization" and said it was "[t]ime for it to die." Then, on February 3, 2025, Mr. Musk posted that "We spent the weekend feeding USAID into the woodchipper. Could gone to some great parties. Did that instead."[7] That same day, in response to a post on X stating, "President Trump and DOGE can now DISMANTLE USAID," Musk posted that "the world will be better for

---

[3] The Court can take judicial notice of the facts in the cited news articles. Courts may consider "matters of which judicial notice may be taken" on a motion to dismiss. *Lewis v. M&T Bank*, 2022 WL 775758, at *1 (2d Cir. Mar. 15, 2022) (affirming judicial notice on 12(b)(6) motion). Judicial notice is appropriate where facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," including from publicly available documents, news reports, and even social media statements *Id.* at *1 (citing Fed. R. Evid. 201(b)(2)); *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 263 (S.D.N.Y. 2019) (taking judicial notice of statements within news reports and tweets from New York mayor's official Twitter account).

[4] Marni Rose McFall, *USAID Director Purged For Refusing to Carry Out DOGE Firings*, Newsweek (Jan. 31, 2025), https://www.newsweek.com/usaid-director-purged-doge-firings-2024030.

[5] Jennifer Hansler, *Elon Musk said Donald Trump agreed USAID needs to be shut down*, CNN (Feb. 3, 2025), https://www.cnn.com/2025/02/02/politics/usaid-officials-leave-musk-doge.

[6] *See* https://x.com/elonmusk/status/1886102414194835755?lang=en.

[7] *See* https://x.com/elonmusk/status/1886307316804263979?lang=en.

this." *Does 1-26 v. Musk*, --- F. Supp. 3d ----, 2025 WL 840574, at \*7 (D. Md. Mar. 18, 2025).

- On February 11, 2025, it was DOGE—not the White House or the Department of Education—that announced that contracts totaling more than $900 million at the Department of Education had been canceled.[8]

- On February 18, 2025, President Trump during an interview with Sean Hannity confirmed DOGE and Mr. Musk are so empowered, explaining that, "after he signs an executive order, it gets 'passed on to [Musk] and his group' and 'they're all getting done.'" *Does 1-26 v. Musk*, 2025 WL 840574, at \*2. "[H]e would take that executive order that I'd signed, and he would have those people to whatever agency it was – '[w]hen are you doing it? Get it done. Get it done.' And some guy that maybe didn't want to do it, all of a sudden, he's signing – he just doesn't want to be." *Id.*

- In March, DOGE staffers appeared at the offices of the U.S. Institute for Peace, an independent nonprofit corporation established by Congress, with FBI and other law enforcement agents following discussions between USIP leadership and DOGE attorneys about effectively dissolving USIP.[9] A district court called the episode "deeply troubling." Minute Order dated Mar 19, 2025.

- In early April, according to a report published by Lawfare[10] based on records filed in *Amica Center for Immigrant Rights v. United States Department of Justice*, a DOGE staffer working in the Justice Management Division at the Justice Department unilaterally ordered the cancellation of a contract with the Acacia Center for Justice, which provides legal services for unaccompanied minor children. The cancellation directly contravened an order from the District Court for the District of Columbia requiring three days of notice before any cancellation could take place, and when it reached senior DOJ staffers, they pushed back. But the DOGE staffer promptly canceled the contract anyway.

- In mid-April, more than 75 percent of AmeriCorps was put on leave, and told their contracts would be terminated at the end of the month. News reports indicate those actions also were implemented by DOGE staffers.[11]

---

[8] Zach Montague and Dana Goldstein, *Musk Team Announces Millions in Cuts to Education Dept. Amid Legal Push back*, N.Y. Times (Feb. 11, 2025), https://www.nytimes.com/2025/02/11/us/politics/musk-doge-education-data.html.

[9] Aishvarya Kavi, *Showdown at the Institute of Peace*, N.Y. Times (March 24, 2025), https://www.nytimes.com/2025/03/24/us/politics/showdown-institute-of-peace.html; *See also* https://www.nytimes.com/2025/03/24/us/politics/showdown-institute-of-peace.html.

[10] Anna Bower, *On DOGE, Directives, and DOJ*, Lawfare (Apr. 27, 2025), https://www.lawfaremedia.org/article/on-doge--directives--and-doj.

[11] Aishvarya Kavi, *DOGE Guts Agency That Organizes Community Service Programs*, N.Y. Times (Apr. 17, 2025), https://www.nytimes.com/2025/04/17/us/politics/doge-cost-americorps-community-service.html.

### III.    The Intercept's FOIA Requests

Five FOIA requests are at issue in this case.  The first FOIA request (the "Musk Request") was submitted on March 5, 2025.  *See* Compl., Ex. A.  The Musk Request seeks emails between Mr. Musk and five high-ranking White House and DOGE staffers—Susan Wiles, Christopher Young, Noah Peters, Stephanie Holmes, and Adam Ramada—from January 1, 2025 until the date of the Request.  Compl. ¶ 51.  The Musk Request sought a fee waiver and asked for expedited processing in light of the "considerable public interest in Mr. Musk's role in the Trump administration" and the "urgency to inform the public about it, as further demonstrated by the numerous lawsuits regarding Mr. Musk's role."  Compl. ¶ 51.  Each of the individuals named in the Musk Request appears to have played a significant role in the DOGE activities.  *Id.* ¶¶ 52-57.

The Intercept's second FOIA request was submitted on March 11, 2025 ("MOU Request"). *See* Compl., Ex. B.  The MOU Request seeks all memoranda and/or agreements since January 1, 2025 that: 1) USDS has entered into with any other department, agency, or other component of the federal executive branch; 2) any other department, agency, or other component of the federal executive branch has entered into on USDS's behalf or concerning USDS's work; and 3) any other department, agency, or other component of the federal executive branch has entered into regarding the work of a USDS employee.  Compl. ¶ 58.  As with the Musk Request, the MOU Request sought a fee waiver and expedited processing.  *Id.* ¶ 59.

The Intercept's third request was lodged on March 11, 2025 ("OPF Request"), Compl., Ex. C, seeking "a copy of records from the Official Personnel Folder" for each DOGE employee sufficient to determine their identity and information regarding present and past qualifications for their new roles, including position titles and occupational series, grades, annual salary rates, duty stations, as well as position descriptions, job elements and performance standards.  Compl. ¶ 60.

The Intercept submitted its fourth request on March 14, 2025 ("Gleason Request"). Compl. ¶¶ 62-66 & Ex. D.  It sought emails regarding ostensible USDS Administrator Amy Gleason's "appointment as administrator of the U.S. DOGE Service," as well as emails between Ms. Gleason and Mr. Musk and Vivek Ramaswamy.  It also sought emails between Ms. Gleason and a variety of people known to have been involved with USDS, including Steve Davis, former president of Mr. Musk's Boring Company, who is now another *de facto* leader of DOGE.

The Intercept's fifth and final request also was filed on March 14, 2025 ("Congress Request").  Compl. ¶ 67 & Ex. E.  It sought "all emails…sent to or from any email address from the US DOGE Service email domain" and any email address ending in "house.gov" or "senate.gov" or with Mr. Ramaswamy.  *Id.* ¶¶ 68-69.  The Intercept received exactly one response from USDS, a March 18, 2025 email from an unspecified sender using the email address admin@DOGE.eop.gov, purporting to respond to all of the Requests at once ("Decision Letter"). Compl. ¶ 70 & Ex. F.  The entirety of the Decision Letter reads as follows:

> We are writing in reference to your Freedom of Information Act (FOIA) requests to USDS.
>
> As set forth in Executive Order 14,158, Establishing and Implementing the President's "Department of Government Efficiency," USDS sits within the Executive Office of the President, and the USDS Administrator reports to the President's Chief of Staff.  We write now to inform you that USDS is subject to the Presidential Records Act, 44 U.S.C.S. § 2201 et seq., and is not subject to FOIA. We therefore decline your request.

Though USDS effectively acknowledged receipt of the Requests in the Decision Letter, it has not produced a single record, and The Intercept had not received any further response when it filed the Complaint, or since.

## ARGUMENT

### I.    Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "draw all reasonable inferences in [The Intercept's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff is entitled to relief if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007).  For a motion to dismiss, the Court's review is generally limited to the four corners of the complaint, but it may also consider (1) documents attached to the complaint, (2) any documents incorporated into the complaint by reference, (3) any documents deemed integral to the complaint, and (4) public records.  *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006); *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (public records).

### II.    USDS Is An Agency Subject To FOIA.

The core purpose of FOIA is to "to assure the existence of an informed citizenry [in order] to hold the governors accountable to the governed." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (citation and internal quotation marks omitted).  FOIA "focuses on the citizens' right to be informed about 'what their government is up to,'" by ensuring the release of "[o]fficial information that sheds light on an agency's performance of its statutory duties[.]" *D.O.J. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 750, 773 (1989) (citation omitted).  "[D]isclosure, not secrecy, is the dominant objective" of FOIA. *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

FOIA applies only to federal "agencies." *Main St. Legal*, 811 F.3d at 547. FOIA defines "agency" as "includ[ing] any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President)[.]" 5 U.S.C. § 552(f)(1). In *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 155–57 (1980), the Supreme Court analyzed FOIA's legislative history and concluded that Congress did not intend for "the President's immediate personal staff or units in the Executive Office [of the President] whose sole function is to advise and assist the President" to be "included within the term 'agency' under the FOIA." *Id.* at 156 (quoting H.R. Rep. No. 93–1380 (1974)) (Conf. Rep.).

In the Second Circuit, an EOP entity qualifies as an agency if it wields "substantial independent authority in the exercise of specific functions," so long as the unit's "sole function" is not "to advise and assist the President." *Main St. Legal*, 811 F.3d at 547. When making that determination, courts in this Circuit "acknowledge[] the considerable experience of the Court of Appeals for the District of Columbia Circuit in applying this analysis to various units within the Executive Office." *Id.*

### A.    The Intercept Plausibly Alleged Facts Showing USDS Is In Fact An Agency.

The Complaint more than adequately alleged that USDS is functioning as an agency. Among other facts, it alleges:

- That "DOGE has taken numerous actions without any apparent advanced approval" by political heads of agencies. Compl. ¶ 15 (quoting *Does 1-26*, 2025 WL 840574, at *3).

- "Musk and his DOGE Team Members have been heavily engaged in gaining access to agency computer systems; identifying grants, contracts, and employees to be terminated; using government-wide emails to monitor employees' weekly activities; and shutting down agency headquarters and websites." Compl. ¶ 19 (quoting *Does 1-26*, 2025 WL 840574, at *16).

- The Executive Orders "appear to endow USDS with substantial authority independent of the President" and "give[] USDS the authority to implement the DOGE Agenda, not just to advise the President in doing so." Compl. ¶ 34 (quoting *CREW*, 2025 WL 752367, at *11).

- Public statements made by President Trump and Mr. Musk "suggest that the President and [DOGE] leadership view the department as wielding decision-making authority to make cuts across the federal government." Compl. ¶ 35 (quoting *CREW*, 2025 WL752367, at *11).

- USDS "likely has at least some independent authority to identify and terminate federal employees, federal programs, and federal contracts." Compl. ¶ 36.

- DOGE in other circumstances has acknowledged that it is an agency. Compl. ¶ 37.

Critically, USDS had the opportunity to deny the truth of many of these facts in the *CREW* lawsuit, but did not. *E.g., CREW*, 2025 WL 752367, at *12 ("[T]he Court finds it meaningful that in its briefing and at oral argument, USDS has not contested any of the factual allegations suggesting its substantial independent authority."). USDS also notably does not deny that, in circumstances where it would benefit them, USDS "has argued that it qualifies as an agency—for instance, for purposes of the Economy Act." Compl. ¶ 37 (quoting *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*, —— F. Supp. 3d at ——, 2025 WL 542825, at *3 (D.D.C. Feb. 14, 2025)). *See also* Compl. ¶ 37 n.15 (citing *Am. Fed'n of State, Cnty., & Mun. Emps., et al. v. SSA*, No. ELH-25-0596, 2025 U.S. Dist. LEXIS 50909, at *157 (D. Md. Mar. 20, 2025) (ruling that "DOGE is an agency with[in] the meaning of the Privacy Act")).

These facts demonstrate that the implementation of the DOGE agenda extends beyond the "interagency fora" described in *Main Street Legal*, where the court found that the National Security Council was not an agency because of its "lack of authority to do more than advise and assist the President in making or implementing his policies." 811 F.3d at 548. Instead of agency heads coming together to discuss matters with the president, DOGE sends out its own employees to oversee and direct agency activities. And USDS's actual activities—such as accessing classified

information without appropriate clearances "over protests from a USAID security director who was later removed," *CREW*, 2025 WL 752367, at *3, "eliminat[ing] 104 DEI-related contracts with the federal government," and "terminat[ing] 89 of the Department of Education's contracts," *Id*. at *11—are clearly beyond "identifying problems, developing best practices, monitoring implementation." *Main St. Legal*, 811 F.3d at 557.

In light of the above, USDS's claim that its "limited authorities" pale in comparison with the "significant authorities possessed by those EOP components that the D.C. Circuit has held to be FOIA agencies," Mot. at 16, rings hollow.  For example, USDS seeks to distinguish *Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971), where the D.C. Circuit held that OSTP was a FOIA agency because it had independent authority "to evaluate federal scientific research programs, initiate and fund research projects, and award scholarships."  Mot. at 16 (quoting *CREW v. Off. of Admin.*, 566 F.3d 219, 223 (D.C. Cir. 2009)).  Likewise, USDS seeks to juxtapose its independent authority with the authority found sufficient in *Sierra Club v. Andrus*, 581 F.2d 895, 902 (D.C. Cir. 1978), where the Office of Management and Budget was found to be an agency because it had authority to "assemble, correlate, revise, reduce, or increase the requests for appropriations of the several departments or establishments."  Mot. at 16.  But here The Intercept has alleged that USDS has "independent authority to identify and terminate federal employees, federal programs, and federal contracts," which is far more significant than what the would-be agencies could do in either case. Compl. ¶ 36.

### B.    Every Court to Have Considered It Has Found USDS Is An Agency.

Weighing these facts, every court to have considered whether USDS qualifies as an agency has found that it does—both in cases where the government has advocated for that position and against it.  As the court in *AFSCME v. Social Security Administration* pointed out in an April 17, 2025 order granting AFSCME's request for a preliminary injunction, "[t]he government

acknowledged that its claim that DOGE is not an agency has not met with success in any court." 2025 WL 1206246, at *57 n.50 (D. Md. Apr. 17, 2025). More specifically, USDS in *American Federation of Labor and Congress of Industrial Organizations v. Department of Labor*, 2025 WL 542825, at *4 argued it *was* an agency subject to the Economy Act, and the court agreed. Then, in an about face, USDS in a different case, *AFSCME v. Social Security Administration*, argued it was ***not*** an agency subject to the Economy Act, an argument the court rejected. 2025 WL 1206246, at *57 (renewing prior ruling that DOGE is an agency under the Economy Act after the government argued that DOGE is, instead, "an 'instrumentality' of the Executive Branch because it is 'a component of EOP'"). In *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*, 2025 WL 1129227, at *22 (D.D.C. Apr. 16, 2025), the government did not contest "that USDS is an agency—either for purposes of judicial review or APA review," and the court assumed as much. As one district court noted, the government's inconsistency "appears to come from a desire to escape the obligations that accompany agencyhood—subjection to FOIA, the Privacy Act, the APA, and the like—while reaping only its benefits," such that "USDS becomes, on defendants' view, a Goldilocks entity: not an agency when it is burdensome but an agency when it is convenient." *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*, 2025 WL 542825, at *12-13. And as described in greater depth below, the *CREW* Court over USDS's objection found it *was* an agency for purposes of FOIA, on a standard far more burdensome for the plaintiff than the plausibility standard at issue here.

> ### C. An Entity's Charter Documents Are Only One Part Of The *Main Street Legal* Analysis.

Because it cannot deny or overcome Plaintiff's allegations or publicly available information, which show USDS ***in fact*** wields substantial authority independent of the President and does not solely "advise and assist the President," USDS takes the wildly formalist position

that, under *Main Street Legal*, the **only** relevant point of analysis is USDS's charter documents. Mot. at 13-17.  *Main Street Legal* itself, however, makes clear the law is not so formulaic.  It explained that "a court properly **begins** with the authorizing legislation," 811 F.3d at 549 (emphasis added), but also considered legislative history, an OPM memoranda, statements from the President and Department of Justice, *id.* at 557, and a Justice Department investigation.  *Id.* at 560.  Critically, the court also considered the plaintiff's argument that "third-party reports of [the at-issue entity's] actions demonstrate that it does not function only to advise and assist the President but, rather, exercises authority independent of him."  *Id.* at 563.  Here, too, Defendants' **actual conduct** is plainly relevant.

### D.    In Any Event, The Executive Orders Also Indicate USDS Is An Agency.

USDS claims that "the Executive Orders and presidential memorandum collectively demonstrate" that "USDS has a limited set of advisory responsibilities, none of which even arguably involves the authority to direct agencies or other components of the executive branch." Mot. at 14.  But even if the Executive Orders are considered on their own, separate from how USDS has actually operated, USDS's argument fails.

Executive Order 14,158 "establishes the Department of Government Efficiency to **implement** the President's DOGE Agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity."  90 Fed. Reg. at 8441 (emphasis added).  To **implement** is materially different than to advise or assist.  *Cf. Main St. Legal*, 811 F.3d at 549 (finding the National Security Council not an agency for purposes of FOIA where its function, according to its charter, was "to advise the President with respect to the integration of domestic, foreign, and military policies relating to the national security").  As each of the courts that have considered the issue found, implementation indicates agency status.  *CREW*, 2025 WL 752367, at

*11. *See also Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*, 2025 WL 542825, at *3 (concluding USDS is likely an agency under FOIA; "USDS's mission, per the Executive Order, is to 'implement' the President's modernization agenda, not simply to help him form it").

Since he issued the first Executive Order, "President Trump has issued multiple additional executive orders that expand DOGE's role." *Does 1-26*, 2025 WL 840574, at *2. Executive Order 14,210 provides that agencies "shall not fill any vacancies for career appointments that the DOGE Team Lead assesses should not be filled, unless the Agency Head determines the positions should be filled." 90 Fed. Reg. at 9670. It thereby grants the DOGE Team Lead power to keep vacant career positions open unless an agency head overrides their decision, apparently with no input from the President at all. Aptly, Executive Order 14,210 is titled "***Implementing*** the President's Department of Government Efficiency Workforce Optimization Initiative." (emphasis added). *See also State v. Musk*, 2025 WL 520583, at *1 (D.D.C. Feb. 18, 2025) (analyzing Executive Order 14,210 and concluding "[a]t a minimum, this language 'contemplates' DOGE's authority over personnel actions").

Likewise, Executive Order 14,222 directs agencies to consult with DOGE Team Leads on contract and grant reviews, approvals, and terminations and provides as its purpose "commenc[ing] a transformation in Federal spending on contracts, grants, and loans to ensure Government spending is transparent and Government employees are accountable to the American public." 90 Fed. Reg. at 11095. In Executive Order 14,210, Section (f) further provides that "[w]ithin 240 days of the date of this order, the USDS Administrator shall submit a report to the President regarding implementation of this order," 90 Fed. Reg. at 9670, plainly assuming that

these various processes will be undertaken separate from the President and with independent authority and then reported back on when they are complete.

USDS's primary argument for why the orders do not indicate that USDS is an agency under FOIA is that, in establishing USDS, Executive Order 14,158 "expressly distinguishes between USDS and other EOP components, on the one hand, and 'Agencies' on the other" because "[t]he term 'Agency' in the Order explicitly excludes 'the Executive Office of the President or any components thereof,' including USDS." Mot. at 3. *See also id.* at 14 (making similar argument). But that proves far too much, because the whole point of the *Soucie v. David*, 448 F.2d 1067 line of cases is that sometimes EOP units *are* agencies subject to FOIA.

USDS's argument that courts should give "a respectful measure of deference to the President's own statements of intent" when "assessing a claim that the nation's Chief Executive has so conveyed his authority to another person or entity that it can now be exercised independent of him," Mot. at 3, fails for a related reason. *See also* Mot. at 11–12 (arguing deference should be given to "President's own statements of intent" for separation of powers reasons). USDS offers no evidence that President Trump intended for USDS to come outside FOIA. Instead, USDS relies wholly on Executive Order 14,158's supposed distinction between agencies and EOP entities. *Id.* at 3. But that distinction, which appears in the definition of "agency" and nowhere else, says nothing about the ***authority*** bestowed by the Executive Order. And President's Trump's "own statements of intent" have been clear: he intended to provide USDS with substantial independent authority. *E.g., CREW*, 2025 WL 752367, at *11 (quoting President Trump's X post claiming USDS would have the power to "to dismantle Government Bureaucracy, slash excess regulations, cut wasteful expenditures, and restructure Federal Agencies").

16

### III.    The *CREW* Decision Is Highly Persuasive.

Whether USDS is an agency subject to FOIA is not a matter of first impression.  As The Intercept noted in the Complaint, the United States District Court for the District of Columbia in March conducted a thorough analysis of the Executive Orders and other available information showing how USDS has functioned in practice, and concluded that USDS likely qualifies as an agency for the purposes of FOIA.  Compl. ¶¶ 31-36; *CREW*, 2025 WL 752367, at *10.  That authority is highly persuasive, both because it is the ***only*** decision thus far to have considered the issue on the merits, and because "the Second Circuit has evinced a willingness to look particularly to the D.C. Circuit" in FOIA cases.  *Int'l Refugee Assistance Project, Inc. v. U.S. Citizenship & Immigr. Servs.*, 551 F. Supp. 3d 136, 153 n.8 (S.D.N.Y. 2021) ("While no courts have directly addressed some of the issues before the Court, the D.C. Circuit and its district courts have come the closest.  That is not surprising given that courts in the D.C. Circuit, unique among all circuits, have jurisdiction over all FOIA cases.").  *See also Roman v. Nat'l Sec. Agency*, 2009 WL 303686, at *5 (E.D.N.Y. Feb. 9, 2009) (collecting cases).  USDS makes a variety of arguments in its attempt to avoid *CREW*, all of which fall flat.

### A.    The *CREW* Court Properly Found USDS Is An Agency Subject To FOIA.

The *CREW* Court found "three sources of information" indicate USDS "wielded substantial authority independently of the President" and therefore qualified as an agency under FOA.  *CREW*, 2025 WL 752367, at *11–10.  Each is equally applicable here.

*First*, the court analyzed the relevant executive orders and found they "appear to endow USDS with substantial authority independent of the President."  *Id.* at *11.  In particular, the Court found that the first order's statement that it was "establish[ing] the Department of Government Efficiency to implement the President's DOGE Agenda," 90 Fed. Reg. at 8441 means what is says,

and "appears to give USDS the authority to implement the DOGE Agenda, not just to advise the President in doing so." *CREW*, 2025 WL 752367, at *11.  In so finding, the *CREW* court cited to *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Dep't of Lab.*, 2025 WL 542825, where the court likewise found that the USDS's mission, as set forth in the first executive order, "is to 'implement' the President's modernization agenda, not simply to help him form it." *CREW*, 2025 WL 752367, at *11.

The *CREW* Court found that the second executive order further supported that conclusion. That order provides that agencies "shall not fill any vacancies for career appointments that the DOGE Team Lead assesses should not be filled, unless the Agency Head determines the positions should be filled."  90 Fed. Reg. at 9670.  The court reasoned that the Order "grants the USDS Team Lead the power to keep vacant career positions open unless an agency overrides their decision" and "appears to contemplate that this authority will be exercised independent of the President." *CREW*, 2025 WL 752367, at *11.

*Second*, the *CREW* court found that public statements made by Mr. Musk and President Trump "indicate that USDS is in fact exercising substantial independent authority." *Id.* at *11. Among others, the court looked to statements from Mr. Musk touting cost savings efforts, and statements from President Trump confirming that USDS "would have the power to 'dismantle Government Bureaucracy, slash excess regulations, cut wasteful expenditures, and restructure Federal Agencies.'" *Id.*  In all, the *CREW* court found, the statements "suggest that the President and USDS leadership view the department as wielding decision-making authority to make cuts across the federal government." *Id.*

*Third*, the court found that "USDS's actions to date demonstrate its substantial authority over vast swathes of the federal government." *Id.*  Among other actions, the court found relevant

that USDS seemingly directed the shutdown of USAID, canceled government contracts at an enormous scale, terminated government employees, gained access to sensitive data and government payment systems, and directed federal employees to send weekly emails summarizing their accomplishments.  *Id.*  "Again, USDS reportedly is leading the charge on these actions, not merely advising others to carry them out."  *Id.*  From all this, the Court concludes, "in practice, USDS is likely exercising substantial independent authority much greater than other EOP components held to be covered by FOIA."  *Id.* at \*12.

> **B.    USDS's Strained Attempt To Identify "Errors" In The *CREW* Court's Analysis Fails.**

USDS makes a variety of hyper technical arguments in a strained attempt to convince this Court to disregard the *CREW* court's reasoning.  None show The Intercept failed to plausibly allege USDS is an agency subject to FOIA.

*First*, USDS faults The Intercept for "plac[ing] great weight" on the *CREW* decision when that decision was decided on a motion for preliminary injunction.  Mot. at 17.  That is a non-sequitur.  The Intercept, of course, does not argue that the *CREW* decision is ***binding*** on this Court, because it is not.  But it is very ***persuasive***.  *E.g.*, *United States v. Roberts*, 710 F. Supp. 3d 658, 670–71 (D. Alaska 2024) ("Although district court opinions do not bind other district courts… they are relevant for their persuasive authority.  It should go without saying that courts may rely on persuasive but nonbinding authority so long as it is in line with the rules that do bind them.") (internal quotation marks and citation omitted).  And critically, the *CREW* decision was decided on "likelihood of success on the merits" standard—a ***more burdensome*** legal standard than the plausibility standard The Intercept faces here.  *See N.Y. Packaging II LLC v. Mustang Mktg. Grp. LLC*, 2022 WL 604136, at \*5 (E.D.N.Y. Mar. 1, 2022) (citing *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007)) ("In great contrast to the more lenient plausibility standard a motion to dismiss

19

is reviewed under, a preliminary injunction is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'").

*Second*, USDS attempts to discredit the *CREW* decision because it relied in part on media reports and public statements by government officials.  Mot. at 17-24.  But there is no prohibition against a court's reasoned reliance on media reports.  Courts "can rely on the news articles mentioned and quoted in the complaint in determining" a motion to dismiss where they are "incorporated in the complaint by reference."  *In re Sterling Foster & Co., Inc., Sec. Litig.*, 222 F. Supp. 2d 216, 251 (E.D.N.Y. 2002) (where "plaintiffs clearly relied on them in bringing the complaint").  *See also Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference").  And courts routinely rely on government officials' public statements to determine their intent.  *E.g., Trump v. Hawaii*, 585 U.S. 667, 700 (2018) (considering President Trump's tweets in analyzing animus).

In any event, as the *CREW* court noted, USDS never claimed the public statements were inauthentic or that the facts contained within the news reports were false.  *CREW*, 2025 WL 752367, at *12 ("The Court finds it meaningful that in its briefing and at oral argument, USDS has not contested any of the factual allegations suggesting its substantial independent authority.").  These media reports, which are based on statements from the President, *de facto* DOGE leader, Elon Musk, and others, unquestionably support the conclusion that USDS is an agency subject to FOIA.  And for the time being, because of USDS's refusal to abide by FOIA, they are the ***only*** method of ascertaining USDS's activities.

*Third*, turning to the merits, USDS offers two confused critiques of the *CREW* decision: (1) that it did not look closely enough at the "DOGE Structure" when determining whether USDS

20

is an agency; and (2) that it supposedly misread Executive Order 14,158's reference to USDS's power to "implement" the DOGE Agenda.  These arguments do not stand up to scrutiny.

***DOGE Structure***: Acknowledging that the first executive order authorizes independent action by ***some*** entity, USDS argues that it does not refer to "USDS in particular."  Mot. at 18-19.  Instead, according to USDS, the "DOGE structure" consists of three parts: the United States Digital Service, renamed United State DOGE Service; "the U.S. DOGE Service Temporary Organization," headed by the USDS Administrator; and "Agency DOGE Teams operating within their respective Agencies."  *Id.* at 2, 18-19 (citing Exec. Order 14,158 §§ 1, 3(a)-(c)).  The DOGE Teams are the entities created to "take actions within Agencies to implement the President's DOGE Agenda," USDS argues, whereas the USDS merely "provid[es] specifically delineated recommendations and consultations, collecting specified information, and advising the President."  Mot. at 18-19.  The *CREW* court erred, USDS further argues, because it "overlooked these distinctions altogether," and failed to realize "USDS and the USDS Temporary Organization are distinct units within the EOP, with limited responsibilities, whereas DOGE Teams operate within Agencies."  Mot. at 19.

But Executive Order 14,158 does not actually support that contrived reading, and USDS cites no evidence beyond the Order to prove it.  In fact, Executive Order 14,158 says that the US DOGE Service Temporary Organization will be established "***within*** USDS," *i.e.*, within the U.S. DOGE Service, and that entity, according to the Executive Order 14,158, "shall be dedicated to advancing the President's 18-month DOGE agenda."  Exec. Order 14,158 § 3(b).  There is also ***nothing*** in Executive Order 14,158 to indicate that USDS (in which the US DOGE Service Temporary Organization resides) merely "provid[es] specifically delineated recommendations and consultations, collecting specified information, and advising the President," Mot. at 19, and

Defendants also cite no evidence for that point in the Motion.  The *CREW* court correctly found—and the Complaint plausibly alleges—there is significant evidence that in fact USDS entities are "coordinating teams across multiple agencies with the goal of reworking and reconfiguring agency data, technology, and spending" which is "'not the stuff of mere advice and assistance.'" *CREW*, 2025 WL 752367, at *12 (citing *Am. Fed'n of Lab. & Cong. of Indus. Orgs.*, 2025 WL 542825, at *3).

> ***US DOGE Teams***.  USDS also is wrong that USDS is not engaged in "implementation" because that is instead being done by the US DOGE Teams "within agencies."  Mot. at 18-19. Reporting from inside the DOGE efforts shows that DOGE Team Leads are mostly USDS employees, not employees of the underlying agencies, as discussed below.  And there is also significant evidence to show that when a DOGE Team Lead comes into conflict with an existing agency official, the DOGE Team Lead prevails.  *See* Facts Section II, *supra*.  *See also Main St. Legal*, 811 F.3d at 554 ("Rather, *Soucie* asks whether an entity does more than render advice or assistance to the President—whether it exercises authority independent of the President, **particularly with respect to individuals or other parts of government**") (emphasis added).[12]

> Indeed, multiple courts throughout the country have rejected the government's argument that agencies—rather than DOGE staffers—are responsible for their own massive restructuring. *E.g., Am. Fed'n of Gov. Emps., AFL-CIO v. Off. of Pers. Mgmt.*, No. 25-cv-01780-WHA (N.D.

---

[12] Indeed, the Court in *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*, No. CV 25-339 (JDB), (D.D.C. Apr. 16, 2025) rejected a similar argument the government made in that case.  Looking to the terms of Executive Order 14,158, that court concluded that the Order's "terms do not limit an agency's DOGE Team membership to employees of that agency."  2025 WL 1129227, at *16.  The Order "states that agency heads must 'establish within their respective Agencies' a DOGE Team," but "does not say that agency heads must 'establish a DOGE Team consisting of employees of their respective Agencies.'…So the E.O. does not require that all USDS personnel operating at the agency defendants are employees of those agencies."  *Id.  See also New York v. Trump*, 2025 WL 1095147, at *11 (S.D.N.Y. Apr. 11, 2025) ("there is much that remains opaque regarding the lines of authority between DOGE Team Members and USDS, and the extent to which the DOGE Team Members provide information to, and take direction from, USDS").

Cal.), ECF Nos. 44, 45, 120, 132 (holding that OPM, not federal agencies, unlawfully ordered the terminations of probationary employees government-wide); *Does 1-26 v. Musk*, 2025 WL 840574 (holding DOGE is directing agency action); *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, __ F. Supp. 3d __, 2025 WL 597959, at *7 (D.D.C. Feb. 25, 2025) (rejecting contention that "countless federal agencies ... suddenly began exercising their own discretion to suspend funding across the board at the exact same time" because it requires "unfathomable" "coincidental assumptions" and "contradicts the record").

Based on these contrived distinctions, USDS invents the argument that the *CREW* court further erred in relying on public statements made by President Trump, Mr. Musk and other USDS officials, because "the actual statements refer to the DOGE Structure generally, rather than USDS in particular" such that they "shed[] no light on the responsibilities assigned to particular units within that structure."  Mot. at 22-23.  That is a distinction without a difference: Executive Order 14,158 tasks "the Department of Government Efficiency" as whole with "implement[ing] the President's DOGE Agenda."  And as discussed above, the US DOGE Service Temporary Organization resides *within* USDS, and the facts available indicate US DOGE Teams in fact are not agency employees working within agencies but rather outside USDS staff working against existing agency employees.

## CONCLUSION

For the foregoing reasons, the Court should deny USDS's motion to dismiss, and should order USDS to begin producing responsive records immediately.

Dated:    New York, New York            Respectfully submitted,
          May 12, 2025

                                        DAVIS WRIGHT TREMAINE LLP

                                        By:/s/ Leena Charlton
                                            Leena Charlton

                                        1251 Avenue of the Americas, 21st Floor
                                        New York, NY 10020-1104
                                        Phone: (212) 402-4072
                                        leenacharlton@dwt.com

                                        Thomas R. Burke (*pro hac vice*)
                                        Sarah E. Burns (*pro hac vice*)
                                        DAVIS WRIGHT TREMAINE LLP
                                        50 California Street
                                        San Francisco, CA 94111
                                        Phone: (415) 276-6500
                                        thomasburke@dwt.com
                                        sarahburns@dwt.com

                                        *Counsel for Plaintiff*
                                        *The Intercept Media, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATIONS</u>

I hereby certify that the word count of this memorandum of law complies with the word limits of Local Civil Rule 7.1(c) and Judge Vernon Broderick's Individual Rules.  According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 7.1(c) is 7,204 words. I certify under penalty of perjury that the foregoing is true and correct.

Dated: May 12, 2025
New York, New York                              */s/ Leena Charlton*
                                                Leena Charlton