UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE INTERCEPT MEDIA, INC.,

        Plaintiff,

  -against-

UNITED STATES DEPARTMENT OF
GOVERNMENT EFFICIENCY, a/k/a UNITED
STATES DOGE SERVICE and UNITED STATES
DIGITAL SERVICE,

        Defendants.

Case No. 25 Civ. 2404 (VSB)(OTW)

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

JAY CLAYTON
United States Attorney for the
Southern District of New York
*Attorney for Defendants*

SARAH S. NORMAND
Assistant United States Attorney
   *-Of Counsel*

## TABLE OF CONTENTS

ARGUMENT ..................................................................................................................................1

    I.      USDS's Charter Documents Do Not Show That the President Has Delegated His Own Authority to USDS ..................................................................................................3

    II.     The Third-Party Reports Cited by Plaintiff Do Not Show That USDS Exercises Substantial Authority Independent of the President........................................................6

CONCLUSION.............................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................................. 1

*CREW v. USDS*,
   __ F. Supp. 3d __, 2025 WL 752367 (D.D.C. 2025) ................................................................ 9

*Global Network Comms., Inc. v. City of N.Y.*,
   458 F.3d 150 (2d Cir. 2006) ..................................................................................................... 6

*John Does 1-26 v. Musk*,
   __ F. Supp. 3d __, 2025 WL 840574 (D. Md. 2025) ................................................................ 9

*Lewis v. M&T Bank*,
   No. 21-933, 2022 WL 775758 (2d Cir. Mar. 15, 2022) ............................................................ 6

*Main Street Legal Servs., Inc. v. NSC*,
   811 F.3d 542 (2d Cir. 2016) ............................................................................................. *passim*

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................................................ 1, 10

**Executive Orders**

Executive Order 14,158 ..................................................................................................... *passim*

Executive Order 14,210 .............................................................................................................. 5

Executive Order 14,222 ........................................................................................................... 5, 8

USDS respectfully submits this reply memorandum of law in further support of defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

**ARGUMENT**

In its opposition, ECF No. 20 ("Opp."), Plaintiff largely disregards the analysis required by the Second Circuit in *Main Street Legal Services, Inc. v. NSC*, 811 F.3d 542, 557-58 (2d Cir. 2016). "Where, as here, the defendant is a unit within the Executive Office of the President," Plaintiff's "conclusory pleading of agency status [i]s insufficient." *Id.* at 567. Plaintiff's conclusory allegations that USDS exercises independent authority, *see* Opp. at 11 (citing Compl. ¶¶ 34-37), are mere "recitals of the elements" of a FOIA claim, which "do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Instead, Plaintiff must allege facts establishing a plausible claim that the President has delegated to USDS his own authority to act. *Main Street Legal Servs.*, 811 F.3d at 567. The focus of this inquiry is whether the President has made a "legal grant" of authority in USDS's "charter documents." *Id.* at 549, 564. Plaintiff's contention that "USDS places too much reliance on its charter documents," Opp. at 2, cannot be squared with *Main Street Legal Services*. There, the Second Circuit focused almost exclusively on the charter documents—statutes for the NSC and parts of the NSC System created by Congress, *see* 811 F.3d at 549-57, and presidential directives and Executive Orders for the parts of the NSC System created by the President, *see id.* at 557-62. While the Court considered "third-party reports of the [NSC System's] actions," Opp. at 14 (citing 811 F.3d at 563), it questioned whether such reports could ever support a conclusion that the President had delegated his own authority to act, *see Main Street Legal Servs.*, 811 F.3d at 563-64

---

[1] This memorandum uses the same defined terms as USDS's opening memorandum. ECF No. 19 ("USDS Br.").

("We are reluctant to locate the 'authority' indicative of agency status in action unsupported by an identified legal grant from Congress or the President."). The Court found it unnecessary to resolve that question, however, given that the cited third-party reports did not reflect such delegation. *See id.* at 564-66.[2] Under *Main Street Legal Services*, USDS's charter documents are not only the starting point; they are the heart of the analysis.

Moreover, for EOP units created by the President himself—as opposed to entities granted authority by Congress—a FOIA plaintiff has a particularly rigorous burden to show that the President has delegated his own authority to act. *See id.* at 557-58 (distinguishing presidential delegations from "statutory grants of authority to executive departments or agencies"). Indeed, the Second Circuit was "skeptical as to whether a President can *ever* be said to have delegated his own authority in a way that renders it truly independent of him." *Id.* at 558 (emphasis added). At the very least, "a due regard for separation of powers signals judicial caution in assessing a claim that the nation's Chief Executive has so conveyed his authority to another person or entity that it can now be exercised independent of him." *Id.*

Plaintiff fails to satisfy its stringent burden of demonstrating a presidential grant of independent authority to USDS. And the one district court to have addressed the question (albeit in a preliminary posture) was not bound by *Main Street Legal Services*, and failed to exercise the deference and judicial caution required by separation of powers and Second Circuit law. *See* USDS Br. at 17-25. Applying the proper legal standards and deference, Plaintiff has not plausibly alleged that USDS is an agency, and the complaint should be dismissed for failure to state a claim.

---

[2] The Court similarly rejected the plaintiff's claim that an OLC (not "OPM") memorandum, "statements from the President and Department of Justice," and a "Justice Department investigation" provided any basis to deviate from the charter documents. Opp. at 14; *see* 811 F.3d at 552-53, 557, 560-61.

2

### I.  USDS's Charter Documents Do Not Show That the President Has Delegated His Own Authority to USDS

As explained in USDS's opening memorandum, USDS Br. at 13-17, USDS's charter documents do not show that the President "has so conveyed his authority to [USDS] that it can now be exercised independent of him," *Main Street Legal Services*, 811 F.3d at 557-58.  Plaintiff devotes just a few pages of argument to the charter documents, *see* Opp. at 14-16, and those arguments are unpersuasive.

As an initial matter, Plaintiff does not meaningfully address the explicit distinction in Executive Order 14,158 between USDS and other EOP components, on the one hand, and "Agencies," on the other.  *See* USDS Br. at 3, 14; *see* Exec. Order 14,158 §§ 2(a), 3(a)-(b).  Plaintiff's response—that "sometimes EOP units *are* agencies subject to FOIA," Opp. at 16 (emphasis in brief)—misses the point.  The relevant question is whether the particular EOP units created by Executive Order 14,158—USDS and its sub-component, the USDS Temporary Organization—are Agencies.  The Executive Order makes clear that the President intended to make *those* EOP units, which report directly to the White House Chief of Staff, distinct from "Agencies."  Exec. Order 14,158 §§ 2(a), 3(a)-(b).  "[T]he President's own statement[] of intent" in the Executive Order that created USDS is entitled to "a respectful measure of deference."  *Main Street Legal Servs.*, 811 F.3d at 558.

Plaintiff also misconstrues the prefatory language in the "Purpose" section of Executive Order 14,158, which states: "This Executive Order establishes the Department of Government Efficiency to implement the President's DOGE Agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity."  Exec. Order 14,158 § 1.  This language refers to "DOGE" generally, which under the "DOGE Structure" established by the Order includes not only USDS (including the USDS Temporary Organization) but also "DOGE Teams"

3

that work "within . . . Agencies." *Id.* § 3; *see* USDS Br. at 18-19. By the express terms of the Order, "DOGE Teams" are established and selected by Agency Heads, and USDS and its Administrator are assigned a purely consultative and coordinating role:

> *In consultation with* USDS, each Agency Head shall establish within their respective Agencies a DOGE Team of at least four employees . . . . Agency heads shall select DOGE Team members *in consultation with* the USDS Administrator. . . . . Agency heads shall ensure that DOGE Team Leads *coordinate their work with USDS* and advise their respective Agency Heads on implementing the President's DOGE Agenda.

Exec. Order 14,158 § 3(c) (emphases added). The prefatory "to implement" language must be read in context with this DOGE Structure: the DOGE Teams established and selected by Agency Heads implement the President's DOGE Agenda within the respective Agencies, and USDS plays a consultative and coordinating role in implementing that agenda.[3]

The Order's assignment of a consultative and coordinating role to USDS does not convey substantial authority to act *independent of* the President. Here again, *Main Street Legal Services* is instructive. *See* USDS Br. at 19-21. Like USDS, the NSC played a "coordination" role, both "channeling . . . policy recommendations up to the Council, and thereby to the President, and channeling the President's policy decisions down for consistent implementation across departments." 811 F.3d at 559. Even though a presidential directive authorized the NSC Principals Committee to make "decisions" and reach "conclusions," "[t]hat circumstance manifest[ed] advice and assistance to the President, not the exercise of authority independent of him." *Id.* Similarly here, USDS advises and assists the President by "coordinating implementation of the President's policies across government departments." *Id.* at 561. Plaintiff's contention that "implementation

---

[3] Executive Order 14,158 also establishes a USDS Temporary Organization within USDS, and headed by the USDS Administrator, that is "dedicated to advancing the President's 18-month DOGE Agenda." Exec. Order 14,158 § 3(b). But the Order delegates no specific roles or responsibilities to the USDS Temporary Organization.

4

indicates agency status," Opp. at 14, is inconsistent with both Executive Order 14,158 and Second Circuit law.

Plaintiff's reliance on other Executive Orders is equally unavailing. Plaintiff notes that Executive Order 14,210 "grants the DOGE Team Lead power to keep vacant career positions open unless an agency head overrides their decision." Opp. at 15 (citing Executive Order 14,210 § 3(b)(ii)). But that provision says nothing at all about *USDS*, much less conveys substantial independent authority to USDS. According to the charter documents, both "DOGE Teams Leads" and "Agency Heads" operate "within their respective Agencies," not within USDS. Exec. Order 14,158 § 3(c); *accord* Exec. Order 14,210 § 2(b)-(c). The only responsibility assigned to USDS in Executive Order 14,210 is simply to "submit a report to the President regarding implementation of this order, including a recommendation as to whether any of its provisions should be extended, modified, or terminated." Exec. Order 14,222 § 3(f). That limited responsibility is entirely consistent with USDS's role in advising and assisting the President by "coordinating implementation of [his DOGE agenda] across government departments." *Main Street Legal Servs.*, 811 F.3d at 561. Likewise, the fact that "Executive Order 14,222 directs agencies to consult with DOGE Team Leads on contract and grant reviews, approvals, and terminations," Opp. at 15 (citing *see* Executive Order 14,222 § 3), does not grant *USDS* authority to approve or terminate contracts or grants.

Plaintiff correctly urges the Court to consider "the ***authority*** bestowed by the Executive Order[s]," Opp. at 16 (emphasis in brief), but then fails to identify any independent authority bestowed on USDS, as opposed to DOGE Teams operating within the respective Agencies. Rather, the Executive Orders allocate to USDS responsibilities to undertake specifically delineated recommendations and consultations, collect specified information, and advise the President.

5

USDS Br. at 19; *see id.* at 14-16 (identifying specific and limited tasks and responsibilities assigned to USDS and its Administrator by Executive Orders and presidential memorandum). To be sure, USDS plays an important and influential role in coordinating the implementation of the President's DOGE Agenda across Agencies. USDS is, after all, "an extension of the President, a vehicle for assisting him in exercising his authority when he cannot do so in person." *Main Street Legal Servs.*, 811 F.3d at 558. And USDS "can exercise some discretion" in doing so. *Id.* But "[n]othing" in USDS's charter documents "indicates any intent to transfer presidential authority so that it can be exercised independent of the President," *id.*, particularly when interpreted with the "judicial caution" required by "a due regard for separation of powers," *id.* at 557.

## II. The Third-Party Reports Cited by Plaintiff Do Not Show That USDS Exercises Substantial Authority Independent of the President

Unable to locate in the charter documents any evidence that the President has delegated substantial independent authority to USDS, Plaintiff relies on snippets from media reports and other sources in an attempt to show "how USDS has actually operated." Opp. at 14. This effort fails for multiple reasons.

First, the majority of the third-party reports on which Plaintiff relies are contained nowhere in the complaint. *See* Opp. at 5-6 & nn.4-11. Contrary to Plaintiff's contention, the Court cannot "take judicial notice of the facts in the cited news articles." Opp. at 5 n.3. According to the cases Plaintiff cites, a court may take judicial notice of publicly available documents only "to determine what statements the documents contained and *not for the truth of the matters asserted in the documents*." *Lewis v. M&T Bank*, No. 21-933, 2022 WL 775758, at *1 (2d Cir. 2022) (emphasis added; citation, quotation marks, and alterations omitted); *accord Global Network Comms., Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006). Plaintiff improperly cites purported "facts" in the media reports for the truth of the matters asserted, namely, to show that "DOGE" or "DOGE

6

staffers" took certain actions between January and April of 2025. *See* Opp. at 5-6, 22. Plaintiff cannot add additional factual allegations to its complaint by judicial notice.

Second, even if the cited third-party reports had been included in the complaint, they do not show that the President has delegated his own authority to act to USDS. The Court should be "reluctant to locate the 'authority' indicative of agency status in action unsupported by an identified legal grant from Congress or the President." *Main Street Legal Servs.*, 811 F.3d at 563-64. Congress has not granted USDS any authority. And as discussed above, the President's legal grants of authority in the charter documents do not show any delegation to USDS of authority to act independent of the President.

Third, if the Court does consider the cited third-party reports, under *Main Street Legal Services*, they must be evaluated in context with the charter documents, and with the deference owed to the President, who is empowered to decide whether to delegate his own power. *Id.* at 558 ("the President alone decides the extent and conditions of any delegation"); *see id.* at 563-66. When viewed with the caution and deference required by separation of powers, *id.* at 557-58, the cited excerpts from third-party reports do not show that the President has delegated substantial independent authority to USDS. They refer to actions taken by "DOGE" generally, "DOGE staff" (or "personnel" or "associates"), or "Mr. Musk's team," rather than USDS. *See* Opp. at 5-6 & nn.4-5, 8-11; *see also* USDS Br. at 22-24 (discussing statements and media reports cited in *CREW* decision). Rather than simply ascribing these actions to USDS (as Plaintiff does), the Court should consider how the reported activities fit into the "DOGE Structure" outlined in Executive Order 14,158, and should not "readily assume that [USDS] has overreached its function[s]" as set forth in the President's Executive Orders, 811 F.3d at 565. For example, the alleged announcement by "DOGE" that "the Education Department had 'terminated' 89 contracts, as well as 29 grants," Opp.

7

6 & n.8, is entirely consistent with the information-gathering and policy coordination role assigned to USDS. *See, e.g.*, Exec. Order § 14,222 § 3(d)(ii) (USDS Administrator to receive "a monthly informational report on contracting activities").

Plaintiff urges the Court to equate "DOGE Teams" and "Team Leads" with USDS, based upon "[r]eporting" that (according to Plaintiff) "shows that DOGE Team Leads are mostly USDS employees," and that "when a DOGE Team Lead comes into conflict with an existing agency official, the DOGE Team Lead prevails." Opp. at 22 & n.12. But even if those third-party reports (or Plaintiff's interpretation of them) were accurate, that would not show that the President has delegated his own authority to USDS. At most, it might show that DOGE Teams and Team Leads have substantial influence within the respective Agencies. And Plaintiff can seek records regarding their activities, as under Executive Order 14,158, the DOGE Teams and Team Leads are working within Agencies and records created by them in those capacities are subject to FOIA. Plaintiff can make FOIA requests of Agencies regarding the actions of the DOGE Teams/Team Leads, communications between DOGE Teams/Team Leads and Agency Heads, and even communications between DOGE Teams/Team Leads and USDS. They can obtain non-exempt records about the cost-saving initiatives that are part of the DOGE Agenda as implemented by the Agency DOGE Teams and Team Leads. But they cannot seek records directly from USDS, which under the charter documents plays only an advisory and consultative role.

In fact, several of the third-party sources cited by Plaintiff underscore the advisory role played by USDS. For example, Plaintiff cites press reports and social media posts by Elon Musk regarding the alleged dismantling of USAID. Opp. 5-6 & nn.4-7. Even assuming arguendo that Musk's statements are relevant to the question of USDS's authority (which USDS would dispute if the matter proceeded, as Musk is an employee of the White House, not of USDS), Plaintiff's

8

own sources state that Musk discussed USAID with the President "in detail," and the President "agreed that we should shut it down." Opp. at 5 n.5. The President is quoted in the same report as saying, "we're getting them out, and then we'll make a decision" on USAID's future. *Id.* These reports undermine a conclusion that USDS is exercising authority independent of the President, "rather than simply communicating that the proposed action is authorized and directed by *presidential* policies." *Main Street Legal Servs.*, 811 F.3d at 565 (emphasis in original).

Plaintiff also relies on excerpts of statements by President Trump, quoted by a district court in Maryland, that "after he signs an executive order, it gets 'passed on to [Musk] and his group' and 'they're all getting done.'" Opp. at 6 (quoting *Does 1-26 v. Musk*, __ F. Supp. 3d __, 2025 WL 840574, at *2 (D. Md. 2025) (alteration in brief)). But according to the same source, the President specifically stated that "DOGE is acting 'at my insistence,'" and that "Musk 'answers to me.'" 2025 WL 840574, at *2. As a general matter, these statements all refer to "DOGE" and are not limited to USDS. In any event, they belie any claim that the President has delegated his own authority to USDS, especially given the "respectful measure of deference to the President's own statements of intent" that separation of powers requires. *Main Street Legal Servs.*, 811 F.3d at 558.

Finally, Plaintiff's suggestion that multiple courts have found USDS to be an agency, *see* Opp. at 12-13, is misleading. No court has squarely held that USDS is an agency subject to FOIA. One district court has reached the preliminary conclusion that the plaintiff was likely to succeed on that question, *see CREW v. USDS*, __ F. Supp. 3d __, 2025 WL 752367, **10-12 (D.D.C. 2025), but that court decided the issue in an expedited posture without the benefit of adversarial briefing.[4]

---

[4] USDS did not contest CREW's factual allegations at the preliminary injunction stage, *see* Opp. at 20, but has since filed a motion for summary judgment in that case, *see CREW v. USDS*, No. 25-cv-511 (D.D.C.), ECF No. 24. The district court has ordered expedited discovery. *Id.* ECF No. 38, which is now proceeding following the D.C. Circuit's denial of the defendants' petition for a

And as USDS explained in its opening memorandum, the *CREW* decision is erroneous in several respects, including that it fails to apply the judicial caution and deference required by separation of powers and Second Circuit law. *See* USDS Br. at 17-25. This Court should not follow that flawed decision.

## CONCLUSION

For the foregoing reasons, and those set forth in USDS's opening memorandum of law, the Court should dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Date: New York, New York
May 19, 2025

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:  /s/ *Sarah S. Normand*
SARAH S. NORMAND
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2709
sarah.normand@usdoj.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 3082 words.

---

writ of mandamus. *See In re DOGE Serv. et al.*, No. 25-5130 (D.C. Cir.) (per curiam order dated May 14, 2025).

10